ROBERT McFARLAND v. NEWS AND OBSERVER PUBLISHING
COMPANY, INC.

(Filed 30 October 1963.)

**1. Libel and Slander § 1;    Torts § 2—**

  An individual making a statement containing libelous matter to a newspaper and the newspaper publishing such matter are joint tort-feasors in publishing the libel.

**2. Libel and Slander § 11;    Torts § 7—**

  Where the party defamed institutes separate actions for libel against the individual making the statement and the newspaper publishing the defamatory matter, a release of the individual from liability is a release of the newspaper also, regardless of the adequacy of the consideration paid for the release.

**3. Pleadings § 30—**

  Where it appears upon the face of the pleadings that defendant was a joint tort-feasor in publishing a libel and that plaintiff released the other

tort-feasor, defendant's motion for judgment on the pleadings should be allowed, since judgment on the pleadings is proper when all facts necessary to establish a plea in bar are either alleged or admitted in plaintiff's pleadings.

APPEAL by plaintiff from *Parker, J.,* January, 1963 Civil Term, NEW HANOVER Superior Court.

On December 13, 1960, the plaintiff instituted this civil action against the News and Observer Publishing Company to recover actual and punitive damages based upon the following allegations:

"3. On or about the first day of November, 1960, one Clyde Patton made a statement to a reporter of the defendant that the plaintiff was guilty of stealing timber belonging to the Wildlife Resources Commission.

"4. The defendant in its issue of November 2, 1960, published said charge of stealing timber, and stated:

" 'A Wildlife Commission report on the case against the five men quoted Burney as saying his reason for requesting a *nol pros* was that the case was "not one thing in the world but a land squabble between the State and some private individuals and ought to be tried in civil court."

" 'Wildlife Resources Director Clyde Patton differed sharply with Burney's contention that the first case was nothing more than "a land squabble. They were actually stealing our timber," Patton said.

" 'On April 22nd Holly Shelter refuge managers discovered five men cutting timber on the 40,000-acre tract. The five, identified as Grant Holliday, Harry Blanding, Noah Brailsford, Robert McFarland and Arthur Bannerman, were arrested and charged with trespassing, cutting and stealing timber valued at over $50.

" 'On September 26 Burney took the *nol pros* . . .'

"5. Said publication charging plaintiff with stealing was false, malicious and defamatory, and accused the plaintiff of being a thief, and with being guilty of a crime."

By answer, the defendant admitted it published the news story complained of upon the basis of information given to its reporter by Mr. Clyde Patton, Director of the North Carolina Wildlife Resources Commission, upon a matter arising in the course and scope of his official duties; that the publication involved a matter of public concern, and the publication was in good faith and without malice.

By way of amendment to the answer, and as a further defense, the defendant alleged:

"1. On the 10th day of November, 1960, Robert McFarland, the plaintiff in the present action, commenced a civil action against Clyde Patton for the recovery of damages alleged to have been sustained by the plaintiff Robert McFarland; and in the complaint filed in the said civil action against Clyde Patton in the Superior Court of New Hanover County, North Carolina, the plaintiff Robert McFarland alleged that on or about the 1st day of November, 1960, the defendant Clyde Patton falsely and maliciously charged that the plaintiff Robert McFarland was guilty of stealing and 'made said charge and defamatory statement to a reporter of the News and Observer, a newspaper of large and general circulation in the State and elsewhere, intending for it to be published in said newspaper, and maliciously stated in substance that plaintiff was a thief, and falsely accused the plaintiff of being a thief, and of stealing timber belonging to the North Carolina Wildlife Resources Commission.' And in said complaint in said civil action against Clyde Patton, the plaintiff Robert McFarland alleged: 'And the said News and Observer published in North Carolina, published said false and defamatory statements in its issue of November 2, 1960, on pages 1 and 2, after naming plaintiff and four others, Clyde Patton stated "they were actually stealing timber." ' "

The plaintiff, by reply to the further defense, said that Article 1 of the amendment to the answer is admitted. As a fourth further defense, the defendant alleged the plaintiff made a voluntary settlement with, and obtained complete satisfaction from, Clyde Patton of all damages arising out of the charges and the publication thereof referred to above, and executed the following release:

"Know all men by these presents:

"That I, Robert McFarland of the County of New Hanover and State of North Carolina, that for and in the consideration of One ($1.00) Dollar of United States currency to him in hand paid by Clyde Patton of the City of Raleigh, the County of Wake and the State of North Carolina, does by these presents release and discharge the said Clyde Patton of and from any, and all manner of action, causes of action, judgments, execution, debts, dues, claims, damages and demands of every kind and nature whatsoever which are against the said Clyde Patton, he ever had or now has or which

he or his heirs, executors or administrators have now or may here-
after have by reason of the statement alleged to be libelous as set
forth in the Complaint in this cause of action.

"IN WITNESS WHEREOF, Robert McFarland has hereunto set
his hand and seal this the 11th day of September, 1962.

"S/Robert McFarland (SEAL)."

By reply to the amendment setting up the fourth further defense,
the plaintiff stated:

"Further answering this article of the amendment to the answer,
the plaintiff admits the execution of Exhibit C thereto attached
and therein referred to."

The plaintiff alleged and the defendant admitted demand for re-
traction and its denial.

The defendant filed a written motion for judgment on the pleadings.
After hearing, the court dismissed the action upon the ground the
plaintiff's pleadings at most disclosed a joint tort committed by Clyde
Patton and by the present defendant; and the plaintiff's release of
Patton likewise released this joint tort-feasor.

The plaintiff excepted and appealed.

*Rountree & Clark, by George Rountree, Jr., Isaac C. Wright for
plaintiff appellant.*

*Poisson, Marshall, Barnhill and Williams, by Alan A Marshall,
Lassiter, Leager, Walker and Banks by Wm. C. Lassiter for defend-
ant appellee.*

HIGGINS, J. According to the allegations and admissions in the
pleadings, Mr. Patton, Director of the North Carolina Wildlife Re-
sources Commission, and Mr. McFarland, the plaintiff in this action,
became involved in a controversy concerning the right of the latter to
remove timber from certain lands which Mr. Patton claimed belonged
to the State agency of which he was Director. Warrants were issued
charging the plaintiff and others with trespassing on the lands of the
Commission and taking, stealing, and carrying away 60 logs, more or
less, belonging to the State, valued at more than $50.00. The defend-
ants in the warrant were bound over to the Pender County Recorder's
Court for trial. Upon demand for a trial by jury the case was removed
to the Superior Court of Pender County.

In the Superior Court the solicitor for the State entered a *nol pros*
with leave, stating the controversy involved the title to land and ought

to be tried in the civil court. Mr. Patton, being dissatisfied with the action of the solicitor in dismissing the case against the plaintiff, contacted the reporter for the defendant and gave out the story which forms the basis of the cause of action here alleged. The defendant published the story. The plaintiff filed separate suits against Mr. Patton and against the defendant.

"It is well settled that all who take part in the publication of a libel or who procure or command libelous matter to be published may be sued by the person defamed either jointly or severally." *Bell v. Simmons,* 247 N.C. 488, 101 S.E. 2d 383.

"That the publication of a libel causing injury to the person defamed is a civil wrong and is embraced within the category of torts may not be gainsaid, and it follows that all those who join in the publication . . . must be regarded in law as joint tort-feasors . . ." *Taylor v. Press Co.,* 237 N.C. 551, 75 S.E. 2d 528.

"There may be responsibility for publication by another, as in the case of . . . (agency) or an express or implied authorization to publish, as where a statement is made to a newspaper reporter." Prosser, Law of Torts, 2d Ed., § 94, p. 600; *Clay v. People,* 86 Ill. 147.

"In North Carolina the consequence of participation in the publication of a libel is joint liability for damages . . ." 41 N.C.L.R. 522.

The release of Patton operated as a release of the News and Observer Publishing Company. "Most of the courts have continued to hold that a release to one of two concurrent tort-feasors is a complete surrender of any cause of action against the other, without regard to the sufficiency of the compensation actually received." Prosser on Torts, 2d Ed., § 46, p. 243.

"A valid release of one joint tort-feasor releases all the joint wrongdoers and is a bar to a suit against any of them for the same injury, for the injured person is entitled to but one satisfaction and the release operates to extinguish the cause of action." (citing authorities) *Simpson v. Plyler,* 258 N.C. 390, 128 S.E. 2d 843.

All facts necessary to establish the plea in bar are either alleged or admitted in the plaintiff's pleadings. Hence it became the court's duty to pass on the plea as a matter of law. Judgment sustaining the plea is in accordance with the authorities controlling in this State. This disposition makes it unnecessary to discuss or consider any of the other defenses interposed.

Affirmed.